# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## NEW ALBANY DIVISION

| | | |
|---|---|---|
| **NADIFO ABDI MUSSE** | ) | **PLAINTIFFS** |
| 3812 7th ST. RD | ) | |
| LOUISVILLE, KY 40216 | ) | |
| | ) | **Civil action no. 4:22-cv-00016** |
| **AND** | ) | |
| | ) | |
| **KHADIJA MAMOW** | ) | **Judge:** |
| 1723 W HILL ST. | ) | |
| LOUISVILLE, KY 40210 | ) | |
| | ) | |
| **AND** | ) | |
| | ) | |
| **KAFIA MUHAMED ALI** | ) | |
| 7523 JUSTAN AVE | ) | |
| LOUISVILLE, KY 40214 | ) | |
| | ) | |
| **AND** | ) | |
| | ) | |
| **MOHAMED ADAN HUSSEIN** | ) | |
| 1032 RUNELL RD | ) | |
| LOUISVILLE, KY 40214 | ) | |
| | ) | |
| **AND** | ) | |
| | ) | |
| **MAKAY OSMAN HASSAN** | ) | |
| 2228 HALE AVE | ) | |
| LOUISVILLE, KY 40210 | ) | |
| | ) | |
| **AND** | ) | |
| | ) | |
| **ALYA MOHAMED** | ) | |
| 2118 W KENTUCKY ST. | ) | |
| LOUISVILLE, KY 40210 | ) | |
| | ) | |
| | ) | |
| Vs. | ) | |
| | ) | |
| **PARKER-HANNIFIN CORPORATION** | ) | |
| 6035 PARKLAND BLVD. | ) | |
| CLEVELAND, OH 44124 | ) | |
| | ) | |
| Serve:     C T CORPORATION | ) | |

|                              |   |            |
|------------------------------|---|------------|
| SYSTEM                       | ) |            |
| 334 North Senate Ave         | ) |            |
| Indianapolis, IN, 46204      | ) | DEFENDANT  |
|                              | ) |            |
|                              | ) |            |
|                              | ) |            |

## COMPLAINT FOR STATUTORY AND EQUITABLE RELIEF

Comes now the Plaintiffs, Nadifo Abdi Musse, Khadija Mamow, Kafia Muhamed Ali, Mohamed Adan Hussein, Alya Mohamed, and Makay Osman Hassan, by counsel, and for their Complaint against the Defendant Parker-Hannifin Corporation, states and represents as follows:

### JURISDICTION AND VENUE

1. At all times relevant to this lawsuit, the Plaintiffs were adult residents of Jefferson County, Kentucky;

2. That the defendant in this action is the Parker-Hannifin Corporation ("Parker"), a foreign corporation.  According to the Secretary of State's website, Defendant Parker's principal office is located at 6035 Parkland Blvd, Cleveland, OH 44124 and their registered agent is C T Corporation System who can be served at 334 North Senate Ave, Indianapolis, Indiana 46204;

3. 28 U.S.C. § 1331 gives federal district courts original jurisdiction over actions "arising under the Constitution, laws, or treaties of the United States;

4. 28 U.S.C. §§ 1346 and 1367 grant federal courts original jurisdiction over certain claims against the United States and supplemental jurisdiction over nonfederal claims that are sufficiently related to federal claims. The subject-matter jurisdiction created by each of these statutes is derivative. That is, the exercise of the jurisdiction created by each is expressly predicated on either the Constitution or some Act of Congress.  Plaintiffs' suit

alleges violations of Title VII of the Civil Rights Act of 1964, as amended, as it appears at volume 42 of the United States Code, beginning at section 2000e, 42 U.S.C. § 2000e-2(a)(1), (2), 42 U.S.C. § 2000e(j), 42 U.S.C. § 2000e *et. al*. Title VII requires employers to accommodate religious beliefs, practices, and observances if the beliefs are "sincerely held" and the reasonable accommodation poses no undue hardship on the employer. There are two causes of action under Title VII: "disparate treatment" (or intentional discrimination) and "disparate impact". A failure to accommodate a religious belief, observance, or practice is a form of disparate treatment. Harassment and denial of religious accommodation are forms of disparate treatment in the terms and conditions of employment. Disparate impact claims arise where a facially neutral employment practice has an unjustified adverse impact on members of a protected class;

5. Plaintiffs were employed by Parker at their 100 River Ridge Circle, Jeffersonville, Indiana 47130 facility, faced adverse action in Jeffersonville, Indiana, and the events giving rise to this action occurred within this federal district;

6. Jurisdiction properly lies with this Honorable Court as the Plaintiffs' damages exceed the threshold for this Court;

7. That Plaintiffs each filed an Equal Employment Opportunity Commission (EEOC) charge of discrimination: Alya Mohamed, 474-2022-364, Kafia Muhamed Ali, 474-2022-365, Khadij M. Mammow, 474-2022-366, Makay Osman Hassan, 474-2022-367, Mohamed Adan Hussein 474-2022-368, and Nadifo Abdi Musse, 474-2022-369, and the EEOC released the claims as it was unlikely the agency could complete its administrative processing within 180 days (attached as Exhibits 1-6);

8. That on January 5, 2022, the EEOC granted Plaintiffs their Right to Sue and this action is being filed within 90 days of said Notice of Right to Sue;

## FACTS

9. The Plaintiffs incorporate all preceding paragraphs as if fully set forth herein;

10. Plaintiffs were all employed by Parker Hannifin Corporation working at the Jeffersonville, Indiana facility;

11. Plaintiffs live in Louisville, Kentucky and are all dark-skinned persons of the Muslim religion from Somalia;

12. That the Muslin, or Islam, religion requires praying as a tenet of an individual's faith;

13. That as it relates to these Plaintiffs, from 2017 until December 31, 2020, Parker permitted Muslim employees, like Plaintiffs, to pray five times per day and set aside an area for Muslim prayers.  This practice was continuous and posed no harm to production nor did it disrupt the business necessity of Parker.  However, beginning in January 2021, Parker, without justification, introduced a new company policy called a Religious Accommodation Policy that stated '*Parker will reasonably accommodate an individuals sincerely held religious beliefs or practices if it would resolve a conflict between those beliefs or practices and a work requirement.  Parker may require support for a religious accommodation request.  All requests must be formalized by following the below format:*'.  The form went on to ask what the requested accommodation is, the length the accommodation is needed, to describe the religious belief or practice that necessitates the request, and to describe any alternative that might address the employee's needs.  The form then asks the employee to sign and date after acknowledging they have read and understood the policy and acknowledge that the religious beliefs and practices which

result in the request for religious accommodation are sincerely held. The form also requires the employee to acknowledge that the request may not be granted but that Parker will attempt to provide a reasonable accommodation that does not create an undue hardship on the company and that Parker may need supporting documentation regarding the religious practice and beliefs to further evaluate the request for a religious accommodation;

14. That this policy acts as a prior restraint that targets, hampers, and burdens religious exercise by forcing employees to seek permission for mandatory religious practices – without a guarantee of approval – and with a threat of a need for prior supporting documentation – so that Parker can consider reasons for an employee's conduct by creating a mechanism for individualized exemptions. Before 2021, Parker didn't require such a form and Muslims could pray daily in an area designated by Parker, a practice that cost nothing and, upon information and belief, resulted in Muslims applying for employment with Parker;

15. That the Muslin faith (Islam) requires daily prayer, and during the Holy month of Ramadan – the ninth month of the Islamic calendar, Muslims worldwide are required to fast, pray, reflect, and engage with community to celebrate its ending with Eid al-Fitr— the "festival of breaking the fast"—which begins with communal prayers at daybreak. In 2021, Ramadan ran from April 12, 2021, to May 12, 2021, and required daytime fasting and five daily prayers: Fajr (sunrise prayer), Dhuhr (noon prayer), Asr (afternoon prayer), Maghrib (sunset prayer), and the Isha (night prayer). Each prayer has a specific window of time in which it must be completed: Sunrise 06:19 AM, Dhuhr 01:45 PM, Asr 05:39

PM, Maghrib 09:09 PM, and Isha 10:42 PM. These are strict requirements for Muslims. Even outside of Ramadan, Muslims are required to pray five times per day;

16. That in Islam, the sacred direction of prayer is toward Mecca, or more precisely, toward the sacred Kaaba in Mecca. Muslims must face this direction in prayer and during various other ritual acts;

17. That Plaintiffs are hourly wage earners who worked at Parker from 2017 to on or about March 25, 2021, after they were told to leave or forced to leave Parker due to threats of calling the police due to trying to pray;

18. That Plaintiffs, all Muslims, in late January 2021, had been praying as required in Islam when supervisor Bill White, a non-Muslim Caucasian male, told the Plaintiffs either individually or in groups that Parker had a new policy and that from this point on they could not pray until after they filled out the new Religious Accommodation Form and had it approved. Mr. White then told the Plaintiffs that from then on, they could pray during their breaks or during their lunch break, but it could no longer be done at the usual and mandatory times in accordance with mandatory religious requirements. Mr. White then told some Plaintiffs to 'go to the bathroom if you're gonna pray'. Some Plaintiffs did go to the bathroom where they were forced to pray in the wrong direction and within an atmosphere that was insulting to Islam and while having to endure foul smells of human excrement. There was no business justification for Parker's new policy and upon information and belief, some supervisors, managers, and non-Muslim employees were told about the new policy and thought it was funny, with some snickering at the Plaintiffs who did try to use the restroom to pray;

19. That some Plaintiffs tried to fill out the Religious Accommodation Form, but none were ever approved either due to the Plaintiffs being terminated and run off the company property or due to Parker choosing not to approve the requests or discriminatorily waiting an impermissible amount of time to review and consider the requests, with the result being that all of these Plaintiffs were eliminated from employment before any approval was released;

20. That Plaintiffs explained to Parker that Ramadan was coming up soon and if their requests weren't addressed and approved by then, it would cause them to run afoul of Parker's new policy or violate their sincerely held beliefs as well as mandatory requirements of Islam;

21. That by March 25, 2021, after Plaintiffs were given an ultimatum to pray in the bathroom or don't pray, they all tried to raise the issues to higher management but were unable to. Some Plaintiffs asked for their forms to be approved and were ultimately told to leave the company property or have the police called, a severe response by Parker. This created a work environment riddled with the threat of violence and caused Plaintiffs to fear for their safety;

22. That on numerous occasions, despite being advised by Parker that Plaintiffs would be permitted to pray if their form was approved, management either refused such requests on a regular basis, or made the granting of such requests so difficult that Muslim employees were discouraged from praying, missed praying, or began prayers late. Oftentimes Muslim employees were told that they should "pray at home" or be forced to pray in smelly bathrooms;

23. That because of Parker's past practice, at this facility, of allowing Muslin Prayers, Parker had no objective basis for restricting, denying, hindering, or questioning the religious nature or the sincerity of Plaintiffs Islam faith, Muslim observances, or religious practices of Plaintiffs;

24. That upon information and belief, Parker allows employees to use their facilities for non-work-related secular activities, like encouraging extra-employment activities such as sports events, social gatherings, and other activities to raise morale and foster employee motivation;

25. That Parker terminated Plaintiffs due to their national origin and religion and failed to accommodate their religion which created a hostile and offensive workplace environment.  Plaintiffs were treated differently than other employees in terms and conditions of employment due to their national origin and religion;

26. That Parker subjected Plaintiffs to reprisal and fear of reprisal for seeking permission to pray before and after Plaintiffs submitted forms to get permission to pray, and for following up on the new policy, asking questions, raising concerns, and engaging in daily prayer;

**DISPARATE TREATMENT: INTENTIONAL DISCRIMINATION - FAILURE TO ACCOMMODATE RELIGION - DISCRIMINATION BY DEFENDANT PARKER, VIOLATION OF 42 U.S.C. § 2000e et al**

27. The Plaintiffs incorporate all preceding paragraphs as if fully set forth herein;

28. That Defendant Parker was Plaintiffs' employer and meets the definition of an employer under Title VII, 42 USC section 2000 *et seq.*;

29. That under Title VII, an employer is prohibited from discriminating because of religion in hiring, promotion, discharge, compensation, or other "terms, conditions or privileges" of

employment, and also cannot "limit, segregate, or classify" applicants or employees based on religion "in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect their status as an employee;

30. That under Title VII it's unlawful to discriminate against a person due to their religion and fail to grant or continue a reasonable accommodation for sincerely held religious beliefs;

31. That under 42 U.S.C. § 2000e(j), the term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that it is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business;

32. That Plaintiffs are Somali Muslims who are required to pray five times a day under the Islam faith, a recognized tradition;

33. That requiring an employee to work without religious accommodation where a work rule conflicts with religious beliefs necessarily alters the terms and conditions of employment for the worse;

34. That Plaintiffs worked for Parker from 2017 and had been allowed to pray in an area designed for religious use.  Beginning in 2021, Parker changed their policy and rolled out a new Religious Accommodation Policy which required persons with religious needs to fill out a form and have their request approved before they could be given permission;

35. That since at least January 1, 2021, Parker has engaged in and continues to engage in unlawful employment practices at its facilities by failing to reasonably accommodate Muslin employees' religious practices and beliefs, place undue prior restraints on the

practice of religion, and began threatening Muslin employees with adverse consequences, including termination, if they chose their religious mandates over the new policy;

36. The effect of the practices complained of above has been to deprive Plaintiffs of equal employment opportunities and otherwise adversely affect their employment status because of their religion;

37. That Parker has no business justification for their actions in depriving Muslims a time and place to pray, as it was a past practice to set aside times and an area for Muslins to pray, a policy that, upon information and belief, encouraged Muslims in the community to apply for employment at Parker;

38. That Parker limited and segregated Plaintiffs because of their Muslim faith, Somali nationality, which deprived Plaintiffs of employment, and resulted in termination;

39. That the employment practices above were intentional, reckless, and done out of malice and disregard to Plaintiffs' protected rights;

## RACE/NATIONAL ORIGIN DISCRIMINATION

40. The Plaintiffs incorporate all preceding paragraphs as if fully set forth herein;

41. That it is unlawful under Title VII for an employer to discharge or discriminate against an employee on the basis of the race or national origin of the individual, pursuant to 42 U.S.C. § 2000e;

42. That Defendant fits the definition of "employer" pursuant to Title VII, SEC. 2000e(b);

43. That Plaintiffs fit the definition of "employees" pursuant to Title VII, SEC. 2000e(f);

44. That Defendant violated Title VII, by discriminating against and discharging Plaintiffs due to their race and national origin, Somali Muslims;

45. That specifically, Defendant discriminated against Plaintiffs based on race and national origin by treating them different than other non-Muslim employees by failing to make accommodations for their religious beliefs, limiting their employment opportunities due to their appearance as Somali Muslins, and targeting Plaintiffs due to their nationality as Somali Muslims by altering their historic practice of providing time and space to pray without justification;

46. That Parker discharged Plaintiffs due to their race and national origin;

## HOSTILE WORK ENVIRONMENT

47. The Plaintiffs incorporate all preceding paragraphs as if fully set forth herein;

48. That since at least January 1, 2021, Parker has engaged and continues to engage in unlawful employment practices at its facilities in Indiana, in violation of state and federal law by harassing Plaintiffs because of their national origin, Somali, and their religion, Muslim;

49. The harassment was sufficiently severe and pervasive as to alter conditions of employment. An employer is liable for a hostile work environment that an employee endures. Vicarious liability applies when management knows of protected activity, a tangible employment action was the result of information known to management, the employer's policies, when the employer was aware or should have been aware of the activity, and what action, if any, the employer took when it learned of the activity. Employers are automatically liable for religious harassment by a supervisor/manager with authority over a plaintiff when the harassment results in a tangible employment action such as a denial of promotion, demotion, discharge, or undesirable reassignment;

50. Management employees participated in the harassment and human resources knew of the harassment. Moreover, Parker created a discriminatory policy after years of permitting Muslim Prayers, something that encouraged Muslims, like Plaintiffs, to apply for employment with Parker;

51. The effect of the practices complained of above has been to deprive Plaintiffs of equal employment opportunities and otherwise adversely affect their employment status because of their race, national origin and/or religion;

52. The actions of Parker were done with malice and intentional disregard to Plaintiffs rights;

## RETALIATION – 42 U.S.C. § 2000e-3(a)

53. The Plaintiffs incorporate all preceding paragraphs as if fully set forth herein;

54. 42 U.S.C. § 2000e-3(a) of Title VII prohibits retaliation by an employer because an individual has engaged in protected activity. Protected activity consists of opposing a practice the employee reasonably believes is made unlawful by one of the employment discrimination statutes or filing a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII;

55. Title VII's antiretaliation provision encompasses requests for religious accommodations as protected activity. Retaliation means taking an action against an employee because of protected activity that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination;

56. That Defendant retaliated against Plaintiffs for engaging in a protected activity: by threatening Plaintiffs, then terminating Plaintiffs for requesting a religious accommodation to pray at work, Parker sent signals to other employees not to ask for

such accommodations or face reprisal, and after receiving Plaintiffs requests, Parker's act of delaying, denying, or refusing to consider said requests targeted Plaintiffs for reprisal;

57. That after Plaintiffs inquired about a religious accommodation, they were subsequently threatened, placed in smelly restrooms, and terminated from their positions at Parker-Hannifin Corporation;

58. That Parker terminated Plaintiffs for asking for accommodations and attempting to exercise their religious beliefs;

## DISPARATE IMPACT

59. The Plaintiffs incorporate all preceding paragraphs as if fully set forth herein;

60. That the actions of Parker in denying Plaintiffs' prayer time and location tends to discriminate against classes of persons who hold religious beliefs, dissuades persons from applying for employment at Parker, and affects existing employees as the policy imposes undue hardship on anyone who needs a religious accommodation;

61. That Plaintiffs were discriminatorily impacted by Parker's new policy;

62. That Parker's actions violate Title VII by disparately impacting Plaintiffs;

**WHEREFORE**, the Plaintiffs', pray that this Court:

1. Declare Defendant Parker's conduct in violation of Plaintiffs' rights;
2. Award Plaintiffs compensatory damages in such amounts as must be proved at trial for their economic and other losses;
3. Award Plaintiffs pain and suffering and humiliation damages as must be proven at trial;
4. Award Plaintiffs back wages, front pay, and all other benefits that must be proven at trial

5. Award Plaintiffs court costs herein incurred;

6. Award Plaintiffs attorney fees and costs pursuant to Title VII;

7. Award Plaintiffs pre-judgment and post-judgment interest;

8. Award Plaintiffs statutory and punitive damages;

9. Grant Plaintiffs leave to amend their pleadings;

10. Grant Plaintiffs' such relief as this Court may deem just and proper;

## JURY DEMAND

Plaintiffs', demand a jury to try all issues triable by jury.

Respectfully Submitted,

s/ Brian Abell
Brian Abell
Oliver Wilhite
ABELL ATTORNEYS
1387 S. 4th St.
Louisville, KY 40208
502-242-7185
Brian@AttorneyAbell.com